# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DEBRA RITTGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-4019-SAC-KGG |
| | ) |
| MELVIN HALE, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## MEMORANDUM & ORDER ON MOTION TO COMPEL AND MOTION RELATING TO THIRD-PARTY SUBPOENAS

Now before the Court is the "Motion to Quash or Modify Defendant Melvin Hale's Subpoenas to Produce Documents, Information, or Objections" filed by third-parties Emporia State University ("ESU") and ESU President Allison Garrett regarding three of Defendant's subpoenas. (Doc. 59.) Also pending is the "Motion to Compel Compliance with Subpoena" filed by Defendant. (Doc. 48.) This motion relates to the first of the three subpoenas addressed in the third-party Motion to Quash. Having reviewed the submissions of the parties, the Court is prepared to rule.

## FACTS

Plaintiff filed the present action in the District Court of Lyon County, Kansas, alleging Defendant defamed her by accusing her of writing racial slur on a

student's notebook on the ESU campus.  The case was removed to federal court by Defendant, who represents himself *pro se* and also filed a Motion to Proceed Without Prepayment of Fees (*IFP* Application, Doc. 3, sealed), which was granted by the Court (Doc. 6).

> Rittgers previously brought the same claim as a counterclaim in an action filed by Melvin Hale as a plaintiff in this court in Case No. 15-4947.  That case was filed on October 14, 2015.  Rittgers was first named as a defendant in that case in an amended complaint filed on November 4, 2015.  She filed the counterclaim, but not as part of an answer, on April 5, 2016. Case No. 15-4947, Doc. No. 33.  The court dismissed the counterclaim without prejudice on June 15, 2016[,] because the counterclaim was not asserted in an answer to the controlling complaint; it was simply filed as a separate pleading titled "COUNTERCLAIM BY DEFENDANT DEBRA RITTGERS."  In the same order, the court dismissed defendant Rittgers from the case, pursuant to a motion to dismiss filed on behalf of Rittgers and other defendants. So, as explained in an order denying Rittgers' motion to alter or amend judgment, Rittgers was not able to reassert the counterclaim in Case No. 15-4947, because she was dismissed as a party in the case.  See Case No. 15-4947, Doc. No. 66.

(*See* Doc. 11, at 1-2.)

Defendant filed a Motion to Dismiss (Doc. 4), arguing that he did not knowingly make a false statement, that the lawsuit was barred by the statute of limitations, and that it was an "affront to free speech."  (*See generally* Doc. 5.) The District Court subsequently denied the dispositive motion.  (Doc. 11.)

The present motion is brought by non-parties ESU and its president Allison Garrett (hereinafter "Movants"). (Doc. 59.) Movants seek to quash or modify three subpoenas Defendant has addressed to them, each discussed more specifically *infra*.

## ANALYSIS

**A.   Legal Standards.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. "Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." ***Layne Christensen Co. v. Purolite Co.***, 271 F.R.D. 240, 244 (D. Kan. 2010) (quoting ***Seattle Times Co. v. Rhinehart***, 467 U.S. 20, 36 (1984)).

Fed.R.Civ.P. 45 governs subpoenas, with section (d) of that Rule relating to "protecting a person subject to a subpoena" as well as "enforcement." Subsection (d)(1) of the Rule states that

> [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

Subsection (d)(2)(B) relates to objections to subpoenas and states that

> [a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
>
>> (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
>>
>> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

4

Subsection (d)(3)(A) requires the District Court to quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (ii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Thus, the Court must balance Plaintiffs' needs for the information with the potential for undue burden or expense imposed on the third party respondent. The Court will address each subpoena in turn.

**B.      Subpoena No. 1.**

Subpoena No. 1 seeks "[t]he complete document that ESU described on September 9, 2015[,] as a 350-page investigation into the allegations of a hate crime reported by Dr. Melvin Hale and Angelica Hale, and all the documents produced by the independent reviewers that were hired by ESU." (Doc. 59-1.) Movants argue that this subpoena, served on August 9, 2017, is facially deficient and seeks privileged material. (*See* Doc. 59, at 3-7.) Defendant has also moved to compel compliance with the subpoena. (Doc. 48.)

       **1.      Alleged facial deficiencies.**

As to facial deficiencies, Movants argue the subpoena should be quashed because Defendant failed to "set out the text of Rule 45(d) and (e)" pursuant to Fed.R.Civ.P. 45(a)(1)(iv). (*Id.*, at 4 (internal citations omitted).) Movants have not cited – and the Court is unaware of – any Tenth Circuit authority quashing a

5

subpoena in its entirety based on this highly technical rule.  The Court finds it unlikely that movants, who are represented by counsel, were unable to comply with the subpoena because it failed to regurgitate certain language contained in Federal Rule 45.  Although the rule has a valid purpose and obviously remains in effect, the Court is unwilling, in this particular instance, to grant such drastic relief as quashing the subpoena in its entirety for this technical oversight.[1]

Movants also contend that no notice of intent to serve the subpoena was filed in violation of Fed.R.Civ.P. 45(a)(4).  That Rule controls "Notice to Other Parties Before Service" of a subpoena and states that "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things . . . then before it is served on the person to whom it is directed, **a notice and copy of the subpoena must be served on each party**."  (Emphasis added.)  The Advisory Committee notes to the 2007 Amendment to Rule 45 states that "[c]ourts have agreed that notice must be given 'prior' to the return date, and have tended to converge on an interpretation that requires notice to the parties before the subpoena is served on the person commanded to produce or permit inspection."

It is clear from the language of the Rule that it is intended to **require notice to parties to the lawsuit for subpoenas served on third parties, not notice to third party recipients of a subpoena**.  In the present situation, Plaintiff has not

---

[1] The Court notes that the party issuing the subpoena is representing himself *pro se* while Plaintiff and the non-party Movants are represented by counsel.

objected to the lack of notice.[2]  Movants, as third-party recipients of the subpoenas at issue, do not have standing to raise this objection.[3]  As such, the Court finds that there was no violation of Rule 45(a)(4).  Movants' objection regarding notice is **overruled**.

Movants continue that the "place of production constitutes an undue burden" because it "specifies that production of the requested documents was to take place at the U.S. District Court in Wichita, Kansas . . . ."  (Doc. 59, at 4.)  Movants argue that because the subpoena is "solely regarding production of documents" and does not also command an appearance for deposition, hearing, or trial, they would be required to send an individual to the Wichita courthouse "and . . . wander the halls until Defendant Hale is located."  (*Id*.)  In the Court's experience, it is not out of the ordinary for document subpoenas to specify production at a courthouse or other similar location.  Further, Movants would not be required to have an individual deliver and babysit the documents while "wandering the halls" waiting for Defendant to retrieve them.  This objection is **overruled**.

### 2. Allegedly privileged information.

---

[2] It appears from language in Defendant's Motion to Compel that he provided notice to Plaintiff as to this subpoena.  (Doc. 48, at 1.)

[3] Movants' reliance on ***Beach v. City of Olathe, Kansas***, No. 99-2210-GTV, 2001 WL 1098032 (D. Kan. Sept. 17, 2001) (granting motion to quash subpoenas for failure to provide notice under Rule 45) is misplaced because the objection regarding notice was made by a party to the lawsuit, not by third-party recipients of the subpoena.

As mentioned above, Movants also argue that the subpoena, which seeks the complete 350-page investigation into the underlying hate crime allegations, encompasses documents protected by the attorney-client privilege and work product doctrine. (*See* Doc. 59, at 5.) Pursuant to Fed.R.Civ.P. 26(b)(1), discovery is limited to "nonprivileged matters." As to the application of the attorney-client privilege, federal common law requires the following essential elements:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived. Although this description suggests that the privilege only operates to protect the client's communications to a lawyer, the Tenth Circuit recognizes that a lawyer's communication to a client is also protected if it is 'related to the rendition of legal services and advice.'

*In re Syngenta Ag Mir 162 Corn Litigation*, No. 14-2591-JWL, 2017 WL 386835, at *4 (D. Kan. Jan. 27, 2017) (internal citations omitted).

The work product-doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed.R.Civ.P. 26(b)(3)(A). The doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." ***In re Qwest Commc'ns Int'l, Inc.***, 450 F.3d 1179,

8

1186 (10th Cir.2006) (citing U.S. v. Nobles, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)).

It is well-established that a party seeking to assert the work product doctrine or attorney-client privilege "as a bar to discovery has the burden of establishing that it applies." *Watchous Enterprises, LLC v. Pacific National Capital*, No. 16-1432-JTM-JPO, 2017 WL 4310231, at *3 (D. Kan. Sept. 28, 2017) (citing ***Harlow v. Sprint Nextel Corp***., No. 08-2222, 2012 WL 646003, at *5 (D. Kan. Feb. 28, 2012) (internal citation omitted), 748 F.2d 540, 542 (10th Cir. 1984)) and ***Johnson v. Gmeinder***, 191 F.R.D. 638, 642 (D. Kan. 2000) (applying Kansas law)). The Court notes that, in this particular case, Movants

> [have] not produced a privilege log or otherwise provided a detailed description of the documents. The court, therefore, does not possess sufficient information to enable it to determine whether each element of attorney-client privilege is satisfied with respect to each communication. 'A 'blanket claim' as to the applicability of a privilege does not satisfy the burden of proof.'

*Watchous Enterprises, LLC*, 2017 WL 4310231, at *4 (internal citation omitted).

The Court **overrules** Movants' blanket claim of attorney-client privilege and work product protection as to the documents responsive to this subpoena. The Court also **GRANTS, in part**, Defendant's Motion to Compel (Doc. 48). Movants are instructed to produce all non-privileged information responsive to this subpoena within thirty (30) days of the date of this Order. Movants are further

9

instructed to supply Defendant with a compliant privilege log encompassing any and all documents withheld on the basis of the attorney-client privilege and/or work product doctrine.

Movants are reminded that the law of this District is unequivocal that the attorney-client privilege "'protects disclosure of substantive communication between attorney and client, '**it does not protect disclosure of the underlying facts....'' within that communication**." *Progressive Northwestern Ins. Co. v. Gant*, No. 15-9267-JAR-KGG, 2017 WL 3530843, at *4 (D. Kan. Aug. 16, 2017) (emphasis added). The same is true for the work product doctrine. ***Resolution Trust Corp. v. Dabney***, 73 F .3d 262, 266 (10th Cir.1995) ("Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product."). As such, although an investigation may have occurred at the direction of counsel and/or in anticipation of litigation, any facts compiled during of that investigation are not protected by the attorney-client privilege and/or work product doctrine.

The privilege log shall include "a detailed description" of any and all documents withheld "that would allow the court and parties to determine whether every element of the privilege has been meet." ***Watchous Enterprises, LLC***, 2017 WL 4310231, at *5. Such description must contain the following:

10

1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

2. The date upon which the document was prepared;

3. The date of the document (if different from # 2);

4. The identity of the person(s) who prepared the document;

5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed;

6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, 'supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;' a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, 'that the documents do not contain or incorporate non-privileged underlying facts;'

7. The number of pages of the document;

8. The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9. Any other pertinent information necessary to establish the elements of each asserted privilege.

*Id*. (internal citations omitted).  The privilege log shall be produced in conjunction with the documents responsive to this subpoena.

Upon receipt of the detailed privilege log from Movants, and a careful review thereof by Defendant, Movants and Defendant shall meet and confer in an effort to resolve any remaining disputes about the application of the attorney privilege or work product protection.  If agreement cannot be reached, Defendant shall have thirty (30) days from the production of documents to file a supplemental motion to compel.

For further guidance, Movants and Defendant should be aware that with few exceptions (*e.g.* third-party disclosure), a communication between an attorney and client will be privileged.  However, the work-product protection is more limited.  It appears from the briefing that the facts relevant to whether the investigation documents were created "in anticipation of litigation" may be in dispute.  If the Court must resolve this factual question, the parties must present facts by deposition transcript or affidavit and be prepared to present live witnesses in an evidentiary hearing on this issue if the Court determines that a hearing is necessary.

**C.     Subpoena No. 2.**

The second subpoena at issue was served on Movant Allison Garrett on September 14, 2017.  (Doc. 59-3.)  It seeks the "[n]ames and contact information for the two outside consultants who corroborated the results of ESU's 2015 hate

crimes investigation," along with 19 categories of documents listed.  (*Id*.)  Defendant instructs that the documents and recordings are to be produced "in electronic format by email" to his listed yahoo.com email address.  (*Id*.)

Movants argue that the subpoena should be quashed because it "'requires a person to comply beyond the geographical limits specified in Rule 45(c).'"  (Doc. 59, at 7 (citing Fed.R.Civ.P. 45(d).)  Movants contend that Rule 45 "contemplates" the issuing party to "identify a *physical* location for compliance" with the subpoena.  (*Id*., at 8 (emphasis in original).)  Movants continue that Defendant's yahoo.com email account "is technically located at Yahoo! Headquarters in Sunnyvale, California."  (*Id*., at 8.)  Movants concede that the advisory comments to Rule 45 contemplate electronic compliance and that "nothing in these amendments limit the ability of the parties to make such arrangements."  (*Id*., quoting Fed.R.Civ.P. 45 advisory committee's note.)  Movants contend that Defendant "never initiated communication" on this issue so "[t]hose arrangements were never made and may have proven impossible in light of the large amount of information that Defendant Hale is seeking access to in this subpoena."  (*Id*.)

The Court is unpersuaded by Movant's argument.  Common sense mandates that Defendant did not intend for documents responsive to the subpoena to be sent to Yahoo! Headquarters in California.  Further, although Defendant could – and should – have initiated communication regarding an electronic response to the

13

subpoena, Movants could just have easily initiated this communication upon receipt of the subpoena. This would have been much easier and more efficient than briefing the issue before the Court. While Movants contend that electronic compliance "may have proven impossible," they do not provide any factual basis to support this conclusory statement. This objection is, therefore, **overruled**.

In addition, Movants argue that the "nineteen itemized documents, things, and ESI" sought through the subpoena "constitute[s] an undue burden on President Garrett." (Doc. 59, at 9.) Movants contend that the documents sought are "far from relevant in this case" and require ESU "to create documents that do not exist and request documents that are readily obtainable by other means." (*Id*.) Movants failed, however, to provide any substantive discussion to support these objections. The Court will not attempt to identify through guesswork which of the requested categories of documents Movants consider irrelevant, which documents Movants contend would need to be created, and which documents Movants contend are "readily obtainable" from other sources. The unduly burdensome objection regarding Subpoena No. 2 is, thus, **overruled**. Movants should, however, interpret the subpoena not to require the creation of any document.

**D.     Subpoena No. 3.**

Defendant filed a Notice of Intent to Issue Subpoena on September 11, 2017. (*See* Doc. 53.) The subpoena itself, however, technically has not been served. To

the extent the subpoena is considered on substantive grounds, Movants argue that it is cumulative of the August 9, 2017, subpoena because it requests from ESU "all documents that pertain or relate to an investigation into an alleged hate crime that occurred on the 8th of April 2015, including all findings of that investigation." (Doc. 53, at 2.)  The Court agrees that the subpoena has not been served and also is unnecessarily cumulative of the subpoena discussed in subsection B, *supra*.  The Motion to Quash is, therefore, **GRANTED** in regard to Subpoena No. 3.

IT IS THEREFORE ORDERED that the Motion to Quash filed by non-party Movants (Doc. 59) is **GRANTED in part** and **DENIED in part** as more fully set forth above.

IT IS FURTHER ORDERED that the Motion to Compel (Doc. 48) filed by Defendant is **GRANTED in part** as more fully set forth above.

All documents responsive to Subpoenas Nos. 1 and 2 (and any accompanying privilege log) shall be provided to Defendant within **thirty (30) days** of the date of this Order.

**IT IS SO ORDERED.**

Dated this 9th day of January, 2018, at Wichita, Kansas.

                                        S/ KENNETH G. GALE
                                        HON. KENNETH G. GALE
                                        U.S. MAGISTRATE JUDGE